622 So.2d 1333 (1993)
Thomas S. BAKER, Appellant,
v.
STATE of Florida, Appellee.
No. 91-1498.
District Court of Appeal of Florida, First District.
May 7, 1993.
Order Certifying Question September 14, 1993.
Louis O. Frost, Jr., Public Defender, James T. Miller, Asst. Public Defender, Jacksonville, for appellant.
Robert A. Butterworth, Atty. Gen., Marilyn McFadden, Asst. Atty. Gen., Tallahassee, for appellee.
MINER, Judge.
Urging that the trial court erred in denying his motion to suppress his out-of-court and in-court identification by state's witnesses and his motion for judgment of acquittal based on insufficient evidence, appellant, Thomas Baker, challenges his conviction and sentence for burglary of a dwelling. We affirm.
With respect to the identification issue, on the record before us, we are unable to conclude that the trial court erred in denying appellant's motion to suppress and affirm on this point without further comment. *1334 Whether the state presented sufficient evidence to sustain appellant's conviction for burglary of a dwelling warrants more extended analysis.
By a third amended information, appellant was charged with burglary of a dwelling. Specifically, the information alleged that on October 15, 1990, Thomas unlawfully entered or remained in Robert Wilson's dwelling with the intent to commit an unspecified offense.
Deposition and trial testimony disclosed that on the day in question, Joy Ellis, Wilson's next-door neighbor, was sitting in her living room around the noon hour when she heard a burglar alarm sound at the Wilson residence. Within three or four seconds after hearing the alarm she looked out a window and observed the appellant come around the far side of the Wilson house riding a bicycle. Mrs. Ellis testified that the Wilson house was hidden from the road located in front by trees and shrubs. A six-foot privacy fence separated the Ellis and Wilson residences and Mrs. Ellis described the area where she had seen appellant as containing shrubbery and a small pathway. She related further that appellant proceeded around the front of the Wilson home and down the driveway to the street.
Joy Ellis' testimony was corroborated by that of her 20-year-old daughter, Angela, who also heard the alarm and went to the window in time to see appellant emerge from the far side of the Wilson home on a bicycle. Like her mother, Angela Ellis did not see appellant jump the fence or enter Wilson's house.
After hearing the burglar alarm and seeing appellant departing the Wilson premises, Joy Ellis called the Neptune Beach Police Department to report the matter and give a description of the person she saw hurrying away. Officer William Jones responded to the call and preliminary investigation at the scene revealed that a window had been broken. Another officer, Richard Pike, was also dispatched to investigate and within two or three minutes of receiving the dispatch describing appellant, Pike stopped Thomas and returned him to the scene where he was identified by Joy Ellis as the man she had seen a few minutes earlier riding a bicycle away from the Wilson home moments after the burglar alarm sounded. Further investigation at the scene by Officer Pike revealed that the lower panel of a window in the back of Wilson's house had been smashed. Next to the broken window lay a window screen and a piece of wood two inches thick, 10 inches in width and 14 inches long. On this piece of board were glass fragments. Similar pieces of wood were found under a plastic tarp at the front of the house. Officer Pike also noted a chain-link fence surrounding the backyard of the Wilson residence.
At the conclusion of the state's case at trial, appellant moved for a judgment of acquittal on the following grounds:
(1) The state failed to prove the house allegedly burgled was owned by Robert Wilson;
(2) The state failed to prove appellant's intent to commit an offense and there was no proof of stealthy entry; and
(3) There was insufficient proof of burglary because there was no showing that appellant entered the dwelling.
After hearing argument, the trial court denied appellant's motion for judgment of acquittal. As to the first basis for acquittal, the court concluded that the evidence, when taken in the light most favorable to the state, was sufficient to establish ownership. Similarly interpreted, the court found the evidence sufficient to establish stealthy entry:
This did occur around the side towards the back of the house in an area that was secluded not only by fences, but by shrubs as well. I looked at the photographs in evidence and [I am] relying on them. Also you can tell that's an area that would be secluded, someone trying to sneak in would pick an area like that. It is pretty apparent as to the location of the window in relation to the surrounding area. Also the fact that the man who has been identified as this defendant did flee the scene as soon as the alarm *1335 went on, the alarm that the neighbors heard. That also is going to stealthy entry. Fleeing the scene on the bicycle when the alarm went off, the fact the window was broken out with a piece of wood, all of those facts and the rest of the circumstances on the record add up to the stealthy entry in this court's opinion in the light most favorable to the state.
As to the third basis of acquittal, the trial court found that there was circumstantial evidence that the defendant entered the house when breaking the windowpane with the block of wood found beside the broken window.
The defense called no witnesses and the case was argued to the jury. The state argued that entry was made by appellant using the block of wood; it was up to the jury to decide whether the circumstantial evidence was sufficient to prove completed entry or only attempted burglary. After argument, the trial court instructed the jury, including in such instructions the standard jury instruction defining "structure" as "any building of any kind, either temporary or permanent, that has a roof over it, and the enclosed space of ground and outbuildings immediately surrounding that structure." (Emphasis added).
Appellant was found guilty of burglary as charged in the information. Thereafter he filed a motion for judgment of acquittal and a motion for new trial. At the hearing on these motions, the state argued for the first time that appellant could be convicted of burglary for entry into the curtilage. The trial court denied the motions and appellant was subsequently sentenced to 30 years in prison as an habitual felony offender. This appeal followed thereafter.
Section 810.02(1), Florida Statutes (1989), defines burglary as "entering or remaining in a structure or conveyance with the intent to commit an offense therein... ." In making its initial ruling on appellant's motion for acquittal, the trial court apparently concluded that appellant's "entry" was based upon his use of the block of wood which shattered the windowpane and thereby protruded inside the structure or dwelling. However, such an "entry by instrument" is not sufficient in Florida or at common law unless the instrument inserted into the structure is actually used to commit the contemplated crime; where the instrument is merely inserted in the course of the break, or to facilitate subsequent entry, its presence inside the structure does not constitute an entry by the defendant. Foster v. State, 220 So.2d 406 (Fla.3rd DCA), cert. denied, 225 So.2d 913 (Fla. 1969); W.R. LaFave & A.W. Scott, Jr., 2 Substantive Criminal Law § 8.13(b) (1986); C.E. Torcia, 3 Wharton's Criminal Law § 333 (1978); see State v. Spearman, 366 So.2d 775 (Fla.2nd DCA 1978).
Despite this apparent misconception, the trial court correctly instructed the jury that a "structure" could include the enclosed grounds immediately surrounding the building. Fla.Std. Jury Instr. (Crim.) 136; see § 810.011(1) and (2), Fla. Stat. (1989) (definitions of "structure" and "dwelling" include the curtilage); J.E.S. v. State, 453 So.2d 168 (Fla. 1st DCA 1984) (the driveway of a home is part of the curtilage so that theft of a bicycle from the driveway constitutes burglary); Tobler v. State, 371 So.2d 1043 (Fla. 1st DCA) (the fenced area surrounding a warehouse is part of the curtilage so that entry onto the grounds to accomplish a theft constitutes burglary), cert. denied, 376 So.2d 76 (Fla. 1979). In the case at bar, there was competent evidence establishing appellant's entry into the fenced yard. He was seen coming from the yard only seconds after the alarm had sounded, which alarm appeared to have been triggered by the breaking of a window with a block of wood. Appellant's suggestion that the block was thrown from outside the curtilage is unreasonable given the size of the block (9" X 14" X 1-1/2"), the fact that the gate was left open, and the presence of a window screen left lying next to the broken window. Additionally, in view of Officer Pike's testimony that the piece of wood found beside the broken window was similar to blocks of wood found under the tarp at the front of the house, we are of the view that it could not be reasonably inferred that appellant entered the *1336 curtilage to take the block of wood from under the tarp and then left the curtilage to throw the wood at the window.
Appellant's intent to commit an offense, which is an essential element of burglary, may be inferred from his stealthy entry. Thus, section 810.07(1), Florida Statutes (1989), provides that "proof of the entering of such structure or conveyance at any time stealthily and without consent of the owner or occupant thereof is prima facie evidence of entering with intent to commit an offense." The trial court correctly instructed the jury that intent could be inferred from stealthy entry. See Fla. Std. Jury Instr. (Crim.) 135. There was ample evidence of appellant's stealthy entry onto the curtilage which, by definition, was part of the "structure" or "dwelling." Appellant entered a fenced yard and sought entry into the house through a rear window. Testimony established that the front of the house was hidden from the road by trees and shrubbery. The yard was secluded due to the presence of fencing and shrubs. Choosing a secluded location calculated to avoid discovery may constitute stealth. See Irvin v. State, 590 So.2d 9 (Fla.3rd DCA 1991) (in prosecution for attempted burglary of a conveyance, stealth instruction was proper under § 810.07(2) where the defendant selected a van parked next to a wall in a deserted parking lot).
Accordingly, appellant's conviction and sentence are herewith affirmed.
WOLF, J., concurs.
ERVIN J., dissents with opinion.
ERVIN, Judge, dissenting.
I would reverse appellant's conviction for burglary of a dwelling because I consider that the evidence was legally insufficient to substantiate an entry into the structure, which is an essential element of burglary.[1] After correctly stating the rule that entry by instrument is not sufficient in Florida unless the instrument inserted into the structure is used to commit the intended crime, the majority nonetheless concludes that there was ample evidence of entry because the statutory definition of dwelling provides that it "means a building ... of any kind ... together with the curtilage thereof." Section 810.011(2), Fla. Stat. (1989) (emphasis added). Under the majority's theory, one who enters the curtilage for the purpose of committing an offense upon a structure, but who does not enter the structure, can be guilty of a violation of Section 810.02(1), Florida Statutes. I cannot agree.
The statutory definition of dwelling or structure, as explained by Professor Jerome Latimer, is the result of the legislature's
desire to expand the offense of burglary from its limited common law application. At common law, the offense of burglary was limited to a dwelling house defined as being any building wherein a man and his family reside. The common law definition of burglary also included those buildings "within the curtilage." The term "curtilage" at common law had no meaning apart from its relation to a dwelling and included those buildings not separated by a public way, which together with the dwelling, could be enclosed by a common fence and which were used for purposes connected with habitation.
Jerome C. Latimer, Burglary Is For Buildings, Or Is It? Protected Structures and Conveyances Under Florida's Present Burglary Statute, 9 Stetson L.Rev. 347, 348-49 (1979) (hereafter Latimer) (footnotes omitted). Professor Latimer explains that because, at common law, the curtilage of a dwelling house was never considered the same as the dwelling house, "[i]t was, therefore, no offense at common law to break a gate of a small fence surrounding a dwelling and enter the yard even where one did so with the intent to commit a felony therein." Id. at 350.
Florida's current legislative definition of structure was obviously intended to expand the statutory offense of burglary to offenses *1337 committed on the grounds of the curtilage in addition to crimes committed or attempted within structures located inside the curtilage. See J.E.S. v. State, 453 So.2d 168 (Fla. 1st DCA 1984) (burglary committed by stealing a bicycle from a driveway outside a residence); Tobler v. State, 371 So.2d 1043 (Fla. 1st DCA) (burglary accomplished by defendant breaking the lock of a gate to a fence surrounding a warehouse and thereafter entering a conveyance located on the grounds and stealing merchandise therefrom), cert. denied, 376 So.2d 76 (Fla. 1979); DeGeorge v. State, 358 So.2d 217 (Fla. 4th DCA 1978) (defendant's attempt to steal property located on pavement area outside warehouse constituted burglary); Greer v. State, 354 So.2d 952 (Fla.3d DCA 1978) (defendant properly convicted of burglary on facts showing that he had scaled a fence surrounding an automobile dealership and was found hiding under a van in the parking area). In each of the above cases  unlike that at bar  there was evidence from which the trier-of-fact could lawfully conclude that an intent existed to commit an offense on only the grounds of the curtilage. This distinction, as I will endeavor to explain, is an important one, for if no evidence exists of an intent to commit a crime within that portion of the curtilage separate from the structure, in the absence of any entry or attempt to enter the structure, a defendant, in my judgment, cannot be convicted of burglary of a dwelling.
It is essential in a prosecution of burglary under the present statute for the state to prove beyond a reasonable doubt that the defendant intended to commit an offense other than that of trespass, meaning the state must establish facts in addition to and apart from unlawful entry; otherwise, the offense would constitute only trespass, as proscribed by Section 810.08(1), Florida Statutes.[2]See Krathy v. State, 406 So.2d 53 (Fla. 1st DCA 1981); Rozier v. State, 402 So.2d 539, 540-41 (Fla. 5th DCA 1981), approved, 436 So.2d 73 (Fla. 1983). This construction of the burglary statute is consistent with the common law rule recognizing that the criminal intent to steal or to commit a felony must exist at the time of the breaking and entering. The breaking and entering would, in the absence of such intent, be a bare trespass at common law. 13 Am.Jur.2d Burglary § 24, at 333 (1964).
The only proof evidencing the defendant's intent to commit an offense separate from that of trespass was that a board had been thrust through a window located at the back of the dwelling. While the board protruded through the broken window, there was no evidence that any portion of the defendant's body entered the house. Moreover, the evidence was entirely circumstantial. One may reasonably infer that the defendant used the board to break the window for the purpose of assisting his entry into the house so that he might commit some unspecified offense therein, such as theft, and that the sound of the alarm thwarted his attempted entry. It is equally plausible that he intended simply to commit the offense of criminal mischief without entering the structure.[3] As we observed in Fowler v. State, 492 So.2d 1344, 1348 (Fla. 1st DCA 1986), review denied, 503 So.2d 328 (Fla. 1987): "Evidence that leaves room for two or more inferences of fact, at least one of which is consistent with the defendant's hypothesis of innocence, is not legally sufficient to make a case for the jury." (Footnote omitted.) Although I concede that the evidence at bar was sufficient to convict the defendant of criminal mischief, *1338 or trespass, I cannot agree that it was sufficient to sustain a conviction for burglary of a dwelling.
If, however, the state's and the majority's view is correct, whether the defendant accomplished an entry into the structure is immaterial, because he had already entered the fenced-in enclosure, and because the evidence discloses at the very minimum the defendant's intent to commit the offense of criminal mischief. Assuming that an entry for the purpose of satisfying the burglary statute can be achieved simply by entry into the curtilage of a structure, without proof of an additional entry into the structure, when the focus of a defendant's intent to commit a crime involves the structure, not the curtilage, then I have the same concern with the constitutionality of the statute as expressed by Professor Latimer, i.e., that the "definition of `structure' as meaning a `building together with the curtilage thereof' [may be] unconstitutionally vague and ambiguous because it fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute." Latimer, supra Page 10, at 352-53. The majority's interpretation of the statute could result in  to use an example from the appellant's brief  a minor's adjudication of delinquency for the offense of burglary, caused by the child's lobbing eggs through an open door or window of a structure after the child had entered the curtilage. I cannot believe that the legislature, in enacting sections 810.011 and 810.02, intended to proscribe such conduct as burglary.
The courts are required to place a construction upon a statute which does not lead to an unreasonable or ridiculous result, Weber v. Dobbins, 616 So.2d 956 (Fla. 1993), and to construe a statute in a manner which would uphold it rather than invalidate it. Vildibill v. Johnson, 492 So.2d 1047 (Fla. 1986). Another important rule of statutory construction is that statutes in derogation of the common law are to be construed strictly; they will not be interpreted so as to displace the common law further than is clearly necessary. Carlile v. Game & Fresh Water Fish Comm'n, 354 So.2d 362 (Fla. 1977).
I consider that when the legislature created the language in section 810.02(1), requiring that entry within a structure or conveyance be accompanied by "the intent to commit an offense therein," it did not intend to displace the common law rule exacting that before a burglary of a dwelling can be established, proof is essential that the defendant entered or attempted to enter the structure for the purpose of committing a crime. Thus, under what I consider to be the correct interpretation of the burglary statute, if evidence is produced showing a defendant's intent to commit an offense upon a structure, in the absence of any evidence disclosing his or her attempt to enter the structure, no burglary has been committed, regardless of whether such person had previously entered the curtilage surrounding that structure. This interpretation is analogous to that placed upon the statute by the Fifth District Court of Appeal in State v. Hankins, 376 So.2d 285 (Fla. 5th DCA 1979), wherein the court affirmed the trial court's dismissal of a charge of burglary of a conveyance on facts showing that the defendant had merely removed hubcaps from an automobile. The court observed that "essential to a prima facie case of burglary is the allegation of facts in support of defendant's intent to commit an offense within the structure or conveyance." Id. at 286. In an opinion later approving Hankins, the Florida Supreme Court observed that the use of the word "therein" in the burglary statute plainly indicates that the crime of burglary can only exist if the defendant formed an intent to commit a crime in that place, i.e., the structure, conveyance, or curtilage. State v. Stephens, 601 So.2d 1195, 1197 (Fla. 1992). Accord People v. Steppan, 105 Ill.2d 310, 317, 85 Ill.Dec. 495, 499, 473 N.E.2d 1300, 1304 (1985) (inclusion of the term "therein" in the burglary statute requires "that a defendant's intent ... to commit a felony coincide with the unauthorized entry." (emphasis added.))
Because the evidence below discloses that no unauthorized entry into the structure *1339 occurred which coincided with an intent to commit an offense therein, the common law rule in my judgment should prevail, and the defendant's adjudication for the offense of burglary of a dwelling should be reversed. As is explained by one respected commentator in the field:
If ... an instrument passes the line of the threshold merely in the course of the break, or to facilitate a subsequent entry of the defendant's person by making the opening wider, there is no entry. Thus, there is no entry when a stick, being used by the defendant merely to break a window, happens to pass through the opening; when, after breaking the glass of a door or window, he pokes a stick inside for the purpose of unlatching the door; when the defendant throws a boulder at a window, and it smashes the window and lands on the inside ....
Charles E. Torcia, 3 Wharton's Criminal Law § 333, at 204 (14th ed. 1980) (emphasis added, footnote omitted).
As criminal mischief is not a necessary or a permissive lesser-included offense of burglary,[4] appellant cannot be convicted of such offense as one lesser included. Because, however, trespass is a permissive or category-2 lesser offense, see Thomas v. State, 591 So.2d 259 (Fla. 4th DCA 1991), and both the proof submitted and the allegations of the information support the imposition of such lesser offense, I would reverse appellant's conviction for burglary of a dwelling, with instructions that the trial court impose an adjudication and sentence for the offense of trespass.

ON MOTION FOR CERTIFICATION
PER CURIAM.
Appellant asks that we certify the following as a question of great public importance:
IS PROOF OF A CRIMINAL MISCHIEF TO A DWELLING (A BROKEN WINDOW) COMMITTED WHILE ON THE CURTILAGE IN A STEALTHY MANNER A BURGLARY UNDER SECTION 810.02, FLORIDA STATUTES, GIVEN THE LEGISLATIVE INTENT OF SECTION 810.02 AND THE COMMON LAW OF BURGLARY COMMITTED ON THE CURTILAGE?
We agree that it is a matter of great public importance that the curtilage and stealth provisions, in combination, appear to broaden the scope of the burglary statute to permit prosecution for what might otherwise be deemed lesser offenses. Consequently, we certify the question as one of great public importance.
ERVIN, MINER and WOLF, JJ., concur.
NOTES
[1] Section 810.02(1), Florida Statutes (1989), defines "burglary" as "entering or remaining in a structure or a conveyance with the intent to commit an offense therein."
[2] Section 810.08(1), Florida Statutes (1989), provides: "Whoever, without being authorized, licensed, or invited, willfully enters or remains in any structure or conveyance, or, having been authorized, licensed, or invited, is warned by the owner or lessee of the premises, or by a person authorized by the owner or lessee, to depart and refuses to do so, commits the offense of trespass in a structure or conveyance." Trespass is a second-degree misdemeanor. Section 810.08(2)(a), Fla. Stat. (1989).
[3] "A person commits the offense of criminal mischief if he willfully and maliciously injures or damages by any means any real or personal property belonging to another... ." Section 806.13(1)(a), Fla. Stat. (1989). Depending upon the amount of damage, criminal mischief is punishable as a misdemeanor of the first or second degree, or as a third-degree felony. Section 806.13(1)(b)(1)-(3), Fla. Stat. (1989).
[4] Criminal mischief is not listed in the schedule of lesser included offenses as either a category-1 or category-2 lesser offense to burglary of a dwelling. See Fla.Std. Jury Instr. (Crim.) 292.